IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA HINES, individually and on behalf of all others similarly situated, : : : | |
| Plaintiff, : | Case No. 2:23-cv-2952 |
| : | Chief Judge Algenon L. Marbley |
| v. : : | Magistrate Judge Chelsey M. Vascura |
| NATIONAL ENTERTAINMENT : GROUP, LLC d/b/a Vanity, : : | |
| Defendant. : | |

## **OPINION & ORDER**

This matter is before this Court on Defendant National Entertainment Group, LLC d/b/a Vanity's ("Vanity") Motion to Dismiss. (ECF No. 4). For the reasons stated below, Defendant's Motion is **DENIED**.

### I. BACKGROUND

Vanity is an adult entertainment club in Columbus, Ohio. (ECF No. 1). In a signed declaration, Plaintiff Jessica Hines declares that she worked for Defendant as a dancer from February 2014 through August 2023. (ECF No. 14-1 at 1). Plaintiff alleges that Vanity did not pay its dancers any wages. (ECF No. 1). Instead, she alleges that dancers were misclassified as independent contractors, rather than employees, who often worked at least forty hours per week, were paid excluisively through tips, paid to perform, and were required to pay no-show fees if they missed work. (ECF No. 1 at 2-4). She further alleges that Defendant had exclusive control over dancers, setting and maintaining operating procedures, dancer rules, prices, admission, and advertising. (*Id.*). At the end of each night, Plaintiff alleges that Vanity took a cut from all tips

made by the dancers, and the dancers were required to split their tips with other employees (*Id.* at 2-4).

On September 13, 2023, Plaintiff brought her initial Complaint on behalf of herself and all putative collective action members aginst Defendant Vanity under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, *et seq.*; the Ohio Semi-Monthly Payment Act, O.R.C. §§ 4113.15; O.R.C. § 2307.60; and common law unjust enrichment. (ECF No. 1 at 1). Plaintiff alleges that by engaging in these practices and failing to pay minimum wages to Plaintiff and the putative collective action members, Defendant violated the FLSA, the OMFWSA, O.R.C. §§ 4111.01, *et seq.*, 4113.15, and 2307.60. (ECF No. 1). Plaintiff seeks a class certification, an award of unpaid wages and interest, liquidated damages, compensatory damages, costs and expenses, and prejudgment and postjudgment interest. (ECF No. 1 at 16-17).

After receiving the Complaint, Defendant filed its Motion to Dismiss. (ECF No. 4). Defendant alleges that it has "no record" of Plaintiff having worked at Vanity from September 2017 to the present. (*Id.* at 1). In its own declaration from General Manager Kenneth Kopras, Defendant claims it conducted an internal investigation and found that Plaintiff did not work at Vanity from September 2017 to the present. (ECF No. 4-4 at 1). Defendant then points to three applications to work at Vanity, submitted by Plaintiff, in October 2020, January 2022, and June 2023. (ECF No. 4 at 1). Defendant alleges that these applications prove that Plaintiff did not work at Vanity. (*Id.*). Defendant allges that because Plaintiff did not work at Vanity, she lacks standing to bring any and all claims in this matter. (*Id.*). In the alternative, Defendant asserts that Plaintiff signed an arbitration agreement when she applied to work at Vanity that stipulates that any dispute

2

with Vanity be resolved through arbitration. (*Id.*). According to Defendant, if Plaintiff does have standing then the case should be stayed pending the completion of arbitration. (*Id.*). The Motion to Dismiss is now ripe for consideration.

## II. STANDARD OF REVIEW

Vanity brings its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. In considering motions to dismiss for lack of subject matter jurisdiction, "[t]he Sixth Circuit has distinguished between facial and factual attacks." *Whitestone Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 2:15-CV-962, 2016 WL 1117595, at *2 (S.D. Ohio Mar. 21, 2016). Facial challenges question the sufficiency of the pleading. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). In reviewing a facial challenge, the trial court takes the allegations as true and employs standards similar to 12(b)(6) safeguards. *Ohio Nat. Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir.1990).

Factual attacks, on the other hand, challenge the factual existence of subject matter jurisdiction. *Ritchie,* 15 F.3d at 598. In other words, a party making a factual attack "challenges the actual existence of the jurisdiction even though the complaint contains the formal allegations necessary to invoke jurisdiction." *Doe v. DeWine*, 99 F. Supp. 3d 809, 815 (S.D. Ohio 2015). In reviewing a factual challenge, no presumptive truthfulness applies and the trial court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie,* 15 F.3d at 598. The district court "must weight the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In this review, the district court "has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve

3

jurisdictional facts." *Id.* Plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *Doe v. Dewine*, 99 F. Supp. at 809.

### III. LAW & ANALYSIS

#### A. Standing

In its Motion to Dismiss, Defendant brings a factual attack on subject matter jurisdiction, arguing that Plaintiff never danced at Vanity, and therefore does not have standing to bring the instant lawsuit. (ECF No. 4 at 1).[1] This Court must determine if Plaintiff has standing because such an analysis concerns this Court's subject matter jurisdiction, and this Court must satisfy itself that subject matter jurisdiction exists before it can proceed with this case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("Every federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction"); *id.* at 94-95 ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (internal quotations omitted); *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) ("[S]tanding to sue is a jurisdictional requirement."); *Nat'l Ass'n of Minority Contractors, Dayton Chapter v. Martinez*, 248 F. Supp. 2d 679, 686 (S.D. Ohio 2002) (raising issue of standing "*sua sponte* because [it] bears on [the court's] subject matter jurisdiction"); *In re Foreclosure Cases*, No. 07-CV-1047, 2007 WL

---

[1] Vanity here is not challenging the sufficiency of the allegations in the complaint; rather it is asserting that an underlying factual premise is incorrect. *See Ne. Ohio Coal. for the Homeless v. Brunner*, No. C2-06-896, 2008 WL 4449514, at *3 (S.D. Ohio Sept. 30, 2008) (treating 12(b)(1) motion as factual attack when the motion argued "that Plaintiffs have never had standing as a matter of fact, and furthermore, challenge[d] Plaintiff's factual showing in support of standing"). Additionally, Vanity attaches a declaration to its Motion. *See Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) ("Northwest's motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack on the court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)."). The Court therefore treats Vanity's motion as a factual attack on subject matter jurisdiction.

4589765, at *1–2 (S.D. Ohio Dec. 27, 2007) ("Standing issues may be raised *sua sponte* by a court because the 'core component' of the constitutional standing inquiry is rooted in Article III's Case or Controversy requirement and concerns a court's subject matter jurisdiction.") (internal citations omitted). This Court will therefore conduct a standing analysis.

Standing is a threshold inquiry in every federal case. *Jet Courier Servs., Inc. v. Fed. Reserve Bank of Atlanta*, 713 F.2d 1221, 1225 (6th Cir. 1983). The doctrine of standing is rooted in Article III of the Constitution, which confines the judicial power of federal courts to deciding actual "cases" or "controversies." *Hollingsworth v. Perry*, 570 U.S. 693, 704-05 (2013). The doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). In this way, standing "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Hollingsworth*, 570 U.S. at 704 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)). The "gist of the standing question is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness upon which the court so largely depends for illumination of difficult . . . questions." *United States v. Richardson*, 418 U.S. 166, 173 (1974).

The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the Sixth Circuit, a plaintiff must meet Article III standing requirements and prudential standing requirements in order to proceed with her case. *McGlone v. Bell*, 681 F.3d 718, 728–29 (6th Cir. 2012). To satisfy the constitutional requirements for standing, plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

5

favorable judicial decision." *Spokeo, Inc.*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560-61). To establish prudential standing requirements, "(1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." *McGone*, 681 F.3d at 729.

In *Gentek Building Products, Inc., v. Sherwin-Williams Company*, the Sixth Circuit confronted a jurisdictional challenge that turned on the interpretation of the phrase "consumer product" in the Magnuson-Moss Warranty Act: if coatings made by Sherwin-Williams constituted a "consumer product" the Magnuson-Moss Warranty Act applied, and if not, the Act did not apply. 491 F.3d 320, 329 (6th Cir. 2007). Sherwin-Williams contended that its coatings did not constitute consumer products under the statute, and therefore argued that the court did not have federal question jurisdiction. *Id.* The court found that the question of whether the coatings constituted a consumer product was intertwined with the merits. *Id.* at 331. The court reasoned that to establish a Magnuson-Moss claim, a plaintiff must show that the item at issue was a "consumer product" so the disputed fact – whether the coating was a consumer product – went to the merits. *Id.*

The question at issue here is not like the question at issue in *Gentek* – Defendant does not dispute that this Court has federal question jurisdiction under FLSA and raises no arguments regarding the text of the statute. This Court's analysis does not turn on a disputed phrase in a statute like "consumer product," but rather on whether Plaintiff herself was injured by Vanity's practices. *See Steel Co.*, 523 U.S. at 126 (distinguishing statutory standing challenges and Article III challenges because the "Article III requirement of remediable injury in fact . . . has nothing to do

with the text of the statute relied upon."). To be sure, in the broadest context, whether Plaintiff was an "employee" is at issue here, and of course a plaintiff must be an "employee" as defined in the FLSA to recover for minimum wage and overtime violations. But the relevant question here is whether Plaintiff had *any* relationship at all with Vanity.

The specific question this Court would need to answer when reviewing the *merits* of this case is whether dancers at Vanity are correctly classified as "independent contractors" or whether they should, in fact, be classified as "employees" under the FLSA. The question this Court must answer when reviewing the *standing* arguments brought by Defendant is whether Plaintiff had *any* relationship with Vanity. In doing so, the Court need not classify the *type* of employment relationship Plaintiff and Vanity had – the crux of the merits issue in this matter. Indeed, the Court need not pass any judgment on whether Plaintiff was an "employee" or an "independent contractor." *Compare Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 441 (6th Cir. 2006) (finding standing and merits intertwined in ERISA case when standing question required court to address argument of whether plaintiff was an independent contractor or an employee). Thus, the "facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim" here and the Court will proceed to the standing analysis. *Gentek*, 491 F.3d at 330.

In *In re Foreclosure Cases*, this Court was confronted with a factual attack on subject matter jurisdiction. No. 07-cv-1047, 2007 WL 4589765 (S.D. Ohio Dec. 27, 2007). In that case, the question was whether plaintiffs actually held the notes and mortgages that were the subject of the action. *Id.* at *4. After weighing the evidence for itself, this Court determined that plaintiffs did not establish that they owned the notes and mortgages, and thus held: "Because Plaintiffs apparently did not own the notes and mortgages at the time the complaints were filed, Plaintiffs

suffered no injury in fact from the debtors' default. Plaintiffs thus do not have standing to bring these actions, and these cases should be dismissed for lack of standing." *Id.* at *5. Just as plaintiffs in *In re Foreclosure Cases* did not have standing to bring suit since they did not, in fact, own the underlying notes and mortgages, Plaintiff would not have standing to bring suit, if she did not, in fact, ever dance, serve, or bartend at Vanity.

As Defendant points out at its own peril, this Court has considered this question before. *De Angelis v. Nat'l Ent. Grp., LLC*, No. 2:17-CV-924, 2018 WL 4334553 (S.D. Ohio Sept. 11, 2018). *De Angelis* contained near-identical facts, and Defendant attempts to use *De Angelis* to underscore its point that if Plaintiff never danced at Vanity, she could not show that she suffered an injury in fact. To satisfy the injury in fact requirement, a party must show an injury that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012). This requirement "mandates that the party *allege* such a personal stake in the outcome of the controversy as to warrant his [or her] invocation of federal-court jurisdiction." *Providence Baptist Church v. Hillandale Comm., Ltd.,* 425 F.3d 309, 318 (6th Cir. 2005) (emphasis added).

Considering the allegations in her Complaint and her sworn declaration, this Court determines that Plaintiff has met her burden of *alleging* that she did, indeed, have some relationship with Vanity, such that she has "a personal stake in the outcome of the controversy as to warrant [*her*] invocation of federal-court jurisdiction." *Providence Baptist Church v. Hillandale Comm., Ltd.,* 425 F.3d 309, 318 (6th Cir. 2005) (emphasis in original). While it is true that Defendant submitted an equally-weighted sworn declaration that Plaintiff *did not* work at Vanity, the Sixth Circuit has said that "in the face of a properly supported motion for dismissal, the plaintiff may

not stand on his pleadings but must, *by affidavit or otherwise*, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (emphasis added). The Sixth Circuit's opinion in *Malone v. Stanley Black & Decker, Inc.* recently crystallized this suggestion into a rule: when a court decides the issue on the papers, a plaintiff's complaint alone can establish a prima facie case and a defendant's affidavit that cuts against jurisdiction is "irrelevant." 965 F.3d at 504. In other words, a plaintiff is not required to controvert a defendant's jurisdictional evidence on a motion to dismiss, unless afforded the opportunity for discovery and an evidentiary hearing. Put simply, Defendant's declaration that Plaintiff did not work at Vanity is irrelevant at this stage. Plaintiff's declaration that she did indeed work at Vanity is well-taken.

Having established Plaintiff's alleged relationship with Vanity at this stage, the remaining standing elements fall into place. Plaintiff asserts her own legal rights and interests here under the FLSA. *McGone*, 681 F.3d at 729. And while she seeks to bring this action on behalf of a putative collective class, her claim does not rest on the rights or interests of third parties, nor is it a generalized grievance shared by a large class of citizens. *Id.* Further still, wage and overtime claims fall squarely within the statutory 'zone of interest' of the FLSA. *Id.* Finally, Plaintiff's alleged injuries are fairly traceable to Defendant and easily redressed by a judicial decision of this Court. *Lujan*, 504 U.S. at 560-61. It is therefore apparent that Plaintiff "has alleged such a personal stake in the outcome of the controversy" as to establish jurisdiction in this case. *Richardson*, 418 U.S. 166, 173 (1974). Accordingly, this Court finds that Plaintiff has satisfied the elements of standing.

### B. The Arbitration Agreement

On October 28, 2020, January 8, 2022, and June 6, 2023, Plaintiff signed a Lease Agreement Waiver, a document purporting to be an application to lease space at Vanity. (ECF Nos. 4-1, 4-2, 4-3). The Lease Agreement Waiver contained a Mandatory Arbitration and Class/Collective Action Waiver ("Arbitration Agreement"), stating in relevant part:

> MANDATORY ARBITRATION AND CLASS/COLLECTIVE ACTION WAIVER. Any and all disputes or claims that arise out of this Agreement, a breach of this Agreement, or out of the relationship between me and National Entertainment Group, LLC (including any wage claim, any claim based upon promises or duties NEG made or owed to me, any claim based upon promises or duties I made or owed to NEG, as well as any claim for money, compensation, tips and/or fees, any claim for wrongful termination, or any claim based upon any statute, regulation, or law, including those dealing with wages and hours, overtime, discrimination, sexual harassment, civil rights, age, gender, sexual preference, or disabilities, as well as any tort claims) shall be resolved by arbitration in accordance with the then effective arbitration rules of the American Arbitration Association "AAA"), and judgment upon the award rendered pursuant to such arbitration shall be final and binding and may be entered in any court having jurisdiction. The arbitration shall be conducted by a single arbitrator in Columbus, Ohio, and each party will bear their own attorney's fees and costs. The arbitration required by this agreement shall be on an individual basis only, and not in any form of class, collective, or private attorney general proceeding. Under no circumstances will the AAA's Supplementary Rules for Class Arbitrations be applied to an arbitration proceeding conducted pursuant to this Agreement. I expressly agree not to participate in any legal action against NEG that is a class action or collective action proceeding. The AAA Rules, which include an explanation of the process for commencing an arbitration and other rules governing arbitration, may be found at the AAA's website: www.adr.org. I understand that by agreeing to the mandatory arbitration set forth herein, I waive my right to a jury trial and to proceed with any claim against NEG in a court of law.

(*Id.*). Defendant asserts that even if Plaintiff has standing, the Arbitration Agreement stipulates that any dispute with Vanity be resolved through arbitration. (ECF No. 4 at 7).

Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C. § 4. The court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 09, 714 (6th Cir. 2000). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* at *1. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In evaluating arbitration agreements, courts have four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

In determining whether the parties agreed to arbitrate under the first prong of the *Stout* test, courts must apply state-law contract formation. *Prachun v. CBIZ Benefits & Ins. Servs., Inc.*, No. 2:14-CV-2251, 2015 WL 5162522, at *3 (S.D. Ohio Sept. 3, 2015); *see also Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-02044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) ("Whether the parties' contract evinces an agreement to arbitrate is governed by principles of state contract law."). Thus, "state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The parties agree that Ohio contract law applies to this action, but the first element of the *Stout* test is not yet satisfied. (ECF No. 4-3 at 18).

11

Under Ohio contract law, a contract can be unenforceable on the ground of unconscionability. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). The Ohio unconscionability doctrine has two components, (1) substantive unconscionability, i.e., based upon unfair and unreasonable contract terms, and (2) procedural unconscionability, i.e., based on the circumstances of each party relative to the formation of the contract. *Id.* Both elements must be present to find a contract unconscionable. *Id.* Plaintiff argues that both substantive and procedural unconscionability are present in this case. (ECF No. 14 at 5).

Looking first to the substantive contract terms, this Court has previously held that arbitration agreements that lack mutual obligations do not constitute enforceable agreements. *De Angelis v. Nolan Enterprises, Inc.*, No. 2:17-CV-926, 2018 WL 4566280, at *4 (S.D. Ohio Sept. 24, 2018). In *De Angelis*, this Court found that a unilateral amendment provision in an agreement rendered the arbitration provision invalid. *Id.* The Arbitration Agreement in this case similarly lacks mutual obligations and demands that only Plaintiff release her claims against Vanity:

> The Participant understands that by signing this Agreement, the Participant agrees to be forever prevented from suing or otherwise claiming against the Activity Provider for any property loss or personal injury that the Participant may sustain while participating in or preparing for the above noted activity.

(ECF No. 4-3 at 3). In a single-page response to Plaintiff's substantive unconscionability claim, Defendant argues that the above clause is not contained in the Arbitration Agreement and is instead contained in the Club Activity Waiver, which is attached to the Arbitration Agreement. (ECF No. 18 at 10). Even severing for a moment the Club Activity Waiver from the Arbitration Agreement, it is evident to this Court that the above clause is *also* contained in the Arbitration Agreement:

> I hereby waive any and all claims past, present, and future against Vanity Gentlemen's Club and further hold Vanity Gentlemen's Club harmless and its employees from the responsibility of reporting, withholding, and disclosure of any

> income earned or received by me. I also understand that I am responsible to disclose and report my income earned while working in a Lease of Space and Time arrangement to the Department of Revenue and/ or The Internal Revenue Service.

(ECF No. 4-1 at 1). Because the terms of the Arbitration Agreement itself lack mutual obligation and unilaterally force Plaintiff to release her claims, the Arbitration Agreement is substantively unconscionable and does not constitute an enforceable agreement. *De Angelis*, 2018 WL 4566280 at *4.

Turning next to procedural unconscionability, this Court "focuses on the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming the provision is unconscionable was represented by counsel at the time the contract was executed." *Schaefer v. Jim Brown, Inc.*, 33 N.E.3d 96, 99 (Ohio Ct. App. 2015). "When considering the relative bargaining positions of the parties, courts must consider factors such as the parties' ages, education, intelligence, business acumen and experience, and who drafted the contract." *Robinson v. Mayfield Auto Group, LLC*, 100 N.E.3d 978, 984 (Ohio Ct. App. Dist. 2017).

Considering the relative bargaining positions of the parties, Plaintiff offers that there existed an "inherent power differential between employer and employee" and that the unique circumstances involving Plaintiff being unclothed and having just paid Vanity to work all weigh in favor of a finding of procedural unconscionability. (ECF No. 14 at 6). Defendant argues, however, that the dynamic of the employer and employee relationship has been rejected as a basis for procedural unconscionability. (ECF No. 18 at 10). "[S]tanding alone, '[m]ere inequality in bargaining power' between employers and employees is insufficient to invalidate an arbitration agreement." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Indeed, courts

cannot consider bargaining power in isolation. Courts instead may consider bargaining power in concert with factors such as the parties' ages, education, intelligence, business acumen and experience, and who drafted the contract. *Robinson*, 100 N.E.3d at 984.

This Court does not enjoy the benefit of access to all of the information in this case. What *is* available to this Court from the record is the business acumen and experience of the parties as well as the author of the contract in question – and based on the available information, these factors weigh in favor of a finding of procedural unconscionability.

Regarding business acumen, Defendant's General Manager, Kenneth Kopras, declares that he has served as the General Manager at Vanity for fifteen years. (ECF No. 4-4 at 1). It is unknown whether or for how long he worked at Vanity or a different adult entertainment club prior to his installation as General Manager at Vanity. As a seasoned General Manager, Mr. Kopras presumably has knowledge of Vanity's business practices and employment policies, including the agreements that it makes its dancers sign. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427 (6th Cir. 2002) (finding that as plaintiff's supervisor, a specific manager presumably had knowledge of DaimlerChrysler's business practices, employment policies, and of plaintiff's strengths and weaknesses). Plaintiff, meanwhile, alleges that she worked as an exotic dancer at Vanity. (ECF No. 14-1 at 1). She may have some knowledge of Vanity's practices that she learned by simply working there, but she cannot be said to have the same level of business acumen or experience as Vanity's General Manager. Moreover, there is no evidence that Plaintiff has any experience in operating or managing an adult entertainment establishment or any other business. Given Mr. Kopras's purported level of experience, the vast information asymmetry present in this case weighs in favor of a finding of procedural unconscionability. *Robinson*, 100 N.E.3d at 984.

When considering contract authorship, courts are critical toward the drafter. *See* RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a (explaining that "[w]here one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party" and "is also more likely than the other party to have reason to know of uncertainties of meaning"); *see also Eclipse Res. - Ohio, LLC v. Madzia*, No. 2:15-CV-177, 2016 WL 7049255 (S.D. Ohio Dec. 5, 2016); *Royal Ins. v. Orient Overseas*, 525 F.3d 409 (6th Cir. 2008); *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254 (6th Cir. 2018); *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587 (6th Cir. 2001); *Citizens Ins. v. Midmichigan Connectcare*, 449 F.3d 688 (6th Cir. 2006). Here, Vanity authored a form Arbitration Agreement that purported to bind Plaintiff to a number of unilateral terms, even though those terms were drafted by Vanity iteself. (ECF No. 4-1 at 1). Under Ohio law, if one of the parties has an absence of meaningful choice regarding the contract terms, the contract is unconscionable. *Allen v. Ohio Civ. Serv. Emps. Ass'n AFSCME, Loc. 11*, No. 2:19-CV-3709, 2020 WL 1322051 (S.D. Ohio Mar. 20, 2020). Plaintiff in this case was given no meaningful choice regarding the contract terms – she could not have been. The form contracts supplied by Vanity contain the exact same terms year over year and offer no opportunity to discuss or negotiate the terms within. After reviewing the relative bargaining positions of the parties, considering their business acumen and experience, and considering who drafted the contract, this Court finds that Defendant placed Plaintiff in a weaker bargaining position regarding the Arbitration Agreement and that this conduct weighs in favor of a finding of procedural unconscionability. *Robinson*, 100 N.E.3d at 984.

The remaining elements this Court must consider are whether the terms of the provision were explained to the weaker party and whether the party claiming unconscionability was represented by counsel at the time the contract was executed. *Schaefer*, 33 N.E.3d at 99. Here, Plaintiff declares plainly that the terms of the Arbitration Agreement were not explained to her on at least two occasions and that she felt "vulnerable and rushed" to sign. (ECF No. 14-1 at 2). Defendant's Reply is silent on this matter. (ECF No. 18). Just as a lack of meaningful choice may be fatal, an agreement is procedurally unconscionable if the effect of the agreement is not readily understandable. *Bragg v. Rent-A-Ctr., Inc.*, No. 5:07CV1389, 2008 WL 183315, at *3 (N.D. Ohio Jan. 18, 2008). Indeed, without an explanation of the terms of the Arbitration Agreement or an opportunity to review the terms on her own, Plaintiff was placed in a weaker bargaining position, weighing in favor of a finding of procedural unconscionability. The final inquiry is whether Plaintiff was represented by counsel at the time the contract was executed. *Schaefer*, 33 N.E.3d at 99. The record plainly shows that she was not. Instead, she was "nearly naked … and was about to start work, which [she] had paid for." (ECF No. 14-1 at 2). Defendant's Reply is again mute regarding the question of Plaintiff's representation. (ECF No. 18).

In light of its above analysis considering each factor of procedural unconscionability, focusing on relative bargaining positions, whether the were explained to the weaker party, and whether Plaintiff was represented by counsel, this Court finds that the Arbitration Agreement in this case is procedurally unconscionable. *Schaefer*, 33 N.E.3d at 99. Coupled with the finding of substantive unconscionability, the Arbitration Agreement is rendered unenforceable. *Morrison*, 317 F.3d at 666. Because the Agreement is unenforceable, this Court need not reach the remainder of the *Stout* analysis 228 F.3d at 714.

### IV. CONCLUSION

For the reasons set forth above, this Court finds that Plaintiff has standing to sue and that the Arbitration Agreement in the Lease Agreement Waiver is void and unenforceable. Defendant's Motion to Dismiss (ECF No. 4) is therefore **DENIED.**

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: August 7, 2024**