IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSICA HINES, individually and on behalf of all others similarly situated,

    Plaintiff,

    v.

NATIONAL ENTERTAINMENT GROUP, LLC d/b/a Vanity,

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

**Case No. 2:23-cv-2952**

**Judge Algenon L. Marbley**

**Magistrate Judge Chelsey M. Vascura**

## OPINION & ORDER

This matter is before the Court on a limited remand by the Sixth Circuit following an earlier Opinion and Order denying Defendant National Entertainment Group, LLC d/b/a Vanity's ("Vanity") Motion to Dismiss and to Stay Proceedings Pending Arbitration. (ECF No.23); *Hines v. Nat'l Ent. Grp., LLC*, 2024 WL 3696269 (S.D. Ohio Aug. 7, 2024) (Marbley, J.). The Sixth Circuit's limited remand has tasked this Court with considering the remaining three factors under *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) to determine whether to grant Vanity's Motion to Stay the Proceedings Pending the completion of Arbitration. *Hines v. Nat'l Ent. Grp., LLC*, 140 F.4th 322 (6th Cir. 2025). Additionally, Vanity has since filed a Motion to Stay Pending Completion of Arbitration of the Opt-In Plaintiffs. (ECF No. 40).

### I. BACKGROUND

#### A. Brief Factual Background

The facts as alleged have been set forth at length in this Court's August 7, 2024, Opinion & Order. (ECF No. 23). The relevant facts are summarized below. Vanity is an adult entertainment

club in Columbus, Ohio. (ECF No. 1). In a signed declaration, Plaintiff Jessica Hines declares that she worked for Defendant as a dancer from February 2014 through August 2023. (ECF No. 14-1 at 1). Hines alleges that Vanity did not pay its dancers any wages. (ECF No. 1). Accordingly, on September 13, 2023, Hines brought her initial Complaint on behalf of herself and all putative collective action members against Defendant Vanity under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq.; the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, et seq.; the Ohio Semi-Monthly Payment Act, O.R.C. §§ 4113.15; O.R.C. § 2307.60; and common law unjust enrichment. (ECF No. 1 at 1). She alleges that by engaging in these practices and failing to pay minimum wages to herself and the putative collective action members, Vanity violated the FLSA, the OMFWSA, O.R.C. §§ 4111.01, et seq., 4113.15, and 2307.60. (ECF No. 1).

After receiving the Complaint, Vanity filed its Motion to Dismiss and to Stay Proceedings Pending Arbitration. (ECF No. 4). Vanity alleged that it had "no record" of Hines having worked at Vanity from any time after September 2017. (*Id.* at 1). Vanity alleged that Hines did not work at Vanity, and therefore, she lacked standing to bring all claims. (*Id.*). In the alternative, Vanity asserts that Hines signed an arbitration agreement when she applied to work at Vanity that stipulated that any dispute with Vanity be resolved through arbitration. (*Id.*). In fact, Hines signed three separate and identical Lease Agreement Waivers between October 2020 and June 2023 that contained arbitration provisions. (*Id.* at 2). According to Vanity, if Hines was found to not have standing then the case should have been stayed pending the completion of arbitration. (*Id.*).

On August 7, 2024, this Court denied Vanity's Motion to Dismiss for Lack of Subject Matter or In the Alternative to Stay the Matter Pending Completion of Arbitration. (ECF No. 4).

2

(ECF No. 23). In that opinion, this Court found that Hines had satisfied all elements of standing. (*Id.* at 9). And this Court reasoned that when evaluating arbitration agreements, courts are required to evaluate the four factor *Stout* test. (*Id.* at 11). Thus, this Court first looked to the first *Stout* factor which evaluates whether the parties agreed to arbitrate. *See Stout*, 228 F.3d at 714. Under Ohio law, this Court reasoned that an arbitration agreement would not satisfy the first *Stout* factor if the agreement was found to be procedurally or substantively unconscionable. (ECF No. 23 at 12). This Court opined that "[b]ecause the terms of the Arbitration Agreement itself lack mutual obligation and unilaterally force Plaintiff to release her claims, the Arbitration Agreement is substantively unconscionable and does not constitute an enforceable agreement." (*Id.* at 13). As to procedural unconscionability, this Court reasoned that the information asymmetry between Hines and Vanity, the fact that Vanity drafted the contract, the fact that Hines had no meaningful choice regarding the terms, and the fact that Hines declared she felt "vulnerable and rushed" to sign the contract weighed in favor of procedural unconscionability. Thus, finding the Agreement to be unenforceable, this court declined to examine the remaining *Stout* factors. (*Id.* at 16). Vanity later filed a notice of appeal. (ECF No. 24). This Court then stayed the case pending resolution of the appeal. (ECF No. 35).

### B.  Sixth Circuit Opinion and Remand

On June 9, 2025, the Sixth Circuit issued its opinion ordering that this Court's denial of Vanity's Motion be vacated, and that this case be remanded for further proceedings consistent with the Sixth Circuit's opinion. (ECF No. 36). The Sixth Circuit ordered this Court to evaluate *Stout* factors two through four:

3

(i) whether the parties agreed to arbitrate; **(ii) whether the claims fall within the scope of that agreement; (iii) whether Congress intended the federal claims to be arbitrable, and (iv) whether to stay the case pending arbitration if the court concludes that some, but not all, of the claims in the action are subject to arbitration.** (ECF No. 36 at 14); *Stout*, 228 F.3d at 714 (emphasis added).

After reviewing the Agreement, the Sixth Circuit found that the Agreement was neither procedurally nor substantively unconscionable. The Sixth Circuit reasoned that there is no strict requirement under Ohio law that an agreement must be explained orally to a party and that Vanity did not hide the meaning of the arbitration clause with "abstruse legal terms." (ECF No. 36 at 6). The Sixth Circuit also emphasized that Hines signed the Agreement on three separate occasions and notably admitted to not reading the Agreement. (*Id.* at 7–10). As to substantive unconscionability, the Sixth Circuit opined that this Court erred by considering the separate Club Activity Waiver and other unrelated provisions in the Lease Waiver when determining substantive unconscionability. (*Id.* at 10). In looking specifically at the arbitration provision, the Sixth Circuit held that unrelated contract provisions should not have prevented this Court from enforcing the arbitration provision in the Agreement. (*Id.* at 12). And the Sixth Circuit found that the agreement was supported by consideration, and that any concerns about judicial economy could not override an enforceable arbitration provision. (*Id.* at 14).

Thus, the Sixth Circuit vacated and remanded this Court's August 7, 2024, decision for further proceedings and analysis under the remaining *Stout* factors.

### C. Post-Appeal Procedural History

On October 15, 2025, this Court held a status conference to discuss the Sixth Circuit's remand of this Court's Opinion & Order (ECF No. 23). As a result of the conference, this Court determined no further briefing as to the remaining *Stout* factors would be necessary. This Court, however, ordered the parties to submit briefing on the limited issue of the status of the two putative Opt-In Plaintiffs. (ECF No. 39).

Subsequently, on November 7, 2025, Vanity filed a Motion to Stay the Matter Pending the Completion of Arbitration (ECF No. 40) with regard to Opt-In Plaintiffs Alexandria Sparks and Amanda Watson. On November 12, 2025, the parties filed a joint status report notifying this Court that the parties agree that the issues to be addressed in the briefing regarding the status of the Opt-In Plaintiffs can best be addressed in response to Defendant's Motion to Stay. (ECF No. 41). Briefing on Vanity's pending motion is complete and now ripe for this Court's review.

## II.  STANDARD OF REVIEW

Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C. § 4 (2012). The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (citing *Stout*, 228 F.3d at 714). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* at *1. In evaluating motions to compel arbitration, "courts treat

5

the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014). The court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

### III. LAW AND ANALYSIS

### A. Sixth Circuit Remand

First, this Court will revisit the first *Stout* factor in light of the Sixth Circuit's analysis and remand. Under the first *Stout* factor courts are required to evaluate whether the parties agreed to arbitrate. *Id.* Accordingly, this Court is tasked with analyzing the Agreement itself. The parties agree that Ohio contract law governs here. (ECF Nos. 14 at 2; 18 at 5). Thus, "state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

Under Ohio contract law, a contract can be unenforceable on the ground of unconscionability. *Morrison v. Circuit City Stores*, Inc., 317 F.3d 646, 666 (6th Cir. 2003). The Ohio unconscionability doctrine has two components, (1) substantive unconscionability, i.e., based

upon unfair and unreasonable contract terms, and (2) procedural unconscionability, i.e., based on the circumstances of each party relative to the formation of the contract. *Id.* Both elements must be present to find a contract unconscionable. *Id.* Plaintiff argues that both substantive and procedural unconscionability are present in this case. (ECF No. 14 at 5).

As for procedural unconscionability, courts must analyze "the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education,  intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 22 (Ohio 2008) (internal quotation marks omitted). Further, procedural unconscionability "concerns the formation of the agreement, and occurs when one party has such superior bargaining power that the other party lacks a 'meaningful choice' to enter into the contract." *Thomas v. Hyundai*, 154 N.E.3d 701, 709 (Ohio Ct. App. 2020) (citation omitted).

Here, Hines argues that she never received an oral explanation of the Lease Waiver's terms nor an opportunity to review the Lease Waiver given she was nearly naked and about to start work when she was asked to sign the Lease Waiver. (ECF No. 14 at 5–6). Despite this Court recognizing there likely was a power imbalance between Hines and Vanity based on Vanity drafting the contract and business acumen, this alone is not sufficient to invalidate the Agreement. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Notably, Hines signed the Agreement three separate times between 2020 and 2023. Even more damaging to Hines's claims is that she admitted to not reading the contract which militates against argument that she was misled. *See ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 579 (Ohio 1998) (citation omitted). Further, Hines

failed to point to a strict requirement that Vanity was obligated to explain the contract to her orally. *Id.* at 578. In light of these factors, the Agreement is not procedurally unconscionable, and Hines has failed to demonstrate that she lacked a "meaningful choice" when entering the Agreement.

Next this Court looks to substantive unconscionability. "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 414 (Ohio 2009). The Agreement provides in relevant part "all disputes or claims that arise out of this Agreement, a breach of this Agreement, or out of the relationship between [Hines] and [Vanity]… shall be resolved by arbitration in accordance with the then effective arbitration rules of the American Arbitration Association ("AAA"), and judgment upon the award rendered pursuant to such arbitration shall be final and binding and may be entered in any court having jurisdiction." (ECF No. 4-1).

Hines asserts that the Agreement is substantively unconscionable given it lacks mutuality in that it only releases Plaintiff's claims and additionally contains an illegal indemnification provision. (ECF No. 14 at 6–7). First, as to Hines's mutuality argument, her argument fails given the Agreement binds both parties to arbitration, not just Hines. Second, Hines's arguments regarding illegal indemnification must fail. As Defendants highlight, the indemnification clause is not contained in the Arbitration Agreement and is instead contained in the Club Activity Waiver, which is attached to the Arbitration Agreement. (ECF No. 18 at 10). Notably, however, a court may only analyze the arbitration clause itself, and not the contract as a whole. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Thus, the Agreement is not substantively unconscionable.

8

Next, this Court will analyze the remaining three *Stout* factors that it did not reach in August 7, 2024, Opinion & Order as directed by the Sixth Circuit.

### 1. Scope of the Arbitration Clause

The second *Stout* factor evaluates the scope of the arbitration agreement. The Sixth Circuit has opined that "if an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement—along with the presumption in favor of arbitrability and the intent of the parties." *Nestle Waters N. Am., Inc. v. Bollman,* 505 F.3d 498, 505 (6th Cir. 2007) (citing *Fazio v. Lehman*, 340 F.3d 386, 395 (6th Cir. 2003)). The arbitration clause within the Agreement signed by Hines specified that it applied to:

> [a]ny and all disputes or claims that arise out of this Agreement, a breach of this Agreement, or out of the relationship between me and National Entertainment Group, LLC (including any wage claim, any claim based upon promises or duties NEG made or owed to me, any claim based upon promises or duties I made or owed to NEG, as well as any claim for money, compensation, tips and/or fees, any claim for wrongful termination, or any claim based upon any statute, regulation, or law, including those dealing with wages and hours, overtime, discrimination, sexual harassment, civil rights, age, gender, sexual preference, or disabilities, as well as any tort claims)…

(ECF No. 4-1).

Hines's FLSA, OMFWSA, and state-law claims arise out of her employment with Vanity. As a result, there is no doubt that her claims are contained within the scope of the arbitration agreement. *Seguin v. Royal Highness, LLC*, 2025 WL 2797277, at \*5 (E.D. Mich. Sept. 30, 2025) ("[T]his 'action' could not be 'maintained without reference' to the 'relationship at issue,' *i.e.*, the employer-employee relationship that the employment agreement established… [t]hink of it this way: [the employee] could never have earned the customer tips to which they claim an entitlement in the absence of an employment relationship with [the employer]."). Thus, none of the claims asserted by Hines could be maintained without reference to the relationship at issue between the

9

parties. Moreover, the arbitration provision explicitly mentions it covers claims arising "out of the relationship" between Hines and Vanity, as well as "any wage claim… any claim for money, compensation, tips and/or fees." (ECF No. 4-1). Accordingly, this Court concludes it was the intent of the parties for such claims to be included under the scope of the arbitration provision.

### 2. Congressional Intent

Next, if federal statutory claims are asserted, the court must consider whether Congress intended those claims to be nonarbitrable. *Stout*, 228 F.3d at 714. The Sixth Circuit has reasoned that "[m]andatory arbitration agreements in the employment context are governed by the Federal Arbitration Act." *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009). The Sixth Circuit has also reasoned that FLSA claims, specifically, are arbitrable. *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000). Accordingly, the third *Stout* factor is satisfied as Congress intended for such claims to be arbitrable.

### 3. Stay of Proceedings

The final *Stout* factor requires courts to examine whether some or all of the claims in the action are subject to arbitration, and whether to stay the remainder of the proceedings pending arbitration. In addition to the alleged FLSA violation, Hines asserts violations of OMFWSA, and state-law claims involving semimonthly payment of wages, wage theft, and unjust enrichment. (ECF No. 1). Given that all claims alleged arise out of the relationship between the parties, all of Hines's remaining claims are also arbitrable. *Seguin*, 2025 WL 2797277, at *5 (compelling arbitration where all claims arose from the employer-employee relationship). The FAA authorizes a stay of proceedings, upon application by a party, when at least one claim is subject to arbitration. 9 U.S.C. § 3; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). It thus follows, that

Vanity is entitled to a stay. Given the parties have additionally disputed Vanity's Motion to Stay Pending Arbitration with regard to Opt-In Plaintiffs (ECF No. 40), however, this Court must first assess those arguments before ruling on the stay.

**B. Vanity's Motion to Stay Pending Arbitration of the Opt-In Plaintiff Claims**

Vanity now requests that this Court order the Opt-In Plaintiffs be required to arbitrate their claims with Vanity. (ECF No. 40). Vanity contends that Opt-In Plaintiffs Amanda Watson and Alexandria Sparks both signed arbitration agreements in which they agreed to arbitrate any dispute with vanity. (*Id.* at 1).Vanity further argues that under those agreements all four *Stout* factors are satisfied. (*Id.* at 2–4).

In response, Plaintiffs argue that: (1) Vanity waived its right to arbitrate the Opt-In Plaintiffs' claims by waiting over a year after the Opt-Ins became parties to the lawsuit to compel arbitration; (2) the arbitration agreements are void because they conflict with FLSA's mandatory fee-shifting provision; and (3) the *Stout* factors weigh against Vanity's Motion with regard to the Opt-In Plaintiffs. (ECF No. 43 at 2–6). This Court will address these arguments in turn below.

*1. Waiver of Arbitration*

First, this Court must assess Plaintiffs arguments that Vanity waived arbitration with regard to the Opt-In Plaintiffs. The Sixth Circuit has historically held that in order to demonstrate waiver of the right to compel arbitration, the opposing party must show the waiving party has: "(1) tak[en] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) [has delayed] its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010). In 2022, however, the Supreme Court eliminated the prejudice requirement for the waiver assessment analysis. *See*

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). The Sixth Circuit has since reasoned that "[a]t a minimum, Morgan eliminated the prejudice requirement." *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024). Accordingly, this Court will analyze whether Vanity has taken any actions deemed to be "completely inconsistent" with arbitration with regard to the Opt-In Plaintiffs.

Plaintiffs contend that given Opt-In Plaintiffs Watson and Sparks became parties on January 24, 2024, and March 4, 2024, respectively, Vanity delayed moving to compel arbitration for over 20 months after the Opt-Ins became parties and thus acted inconsistently with arbitration. (ECF No. 43 at 3). Plaintiffs also note that Vanity did not raise arbitration for the Opt-Ins when pursuing a stay of the case during the Sixth Circuit appeal, nor at the October 15, 2025, status conference. (*Id.*). Additionally, Plaintiffs raise that Vanity did not provide Plaintiffs with the Opt-Ins' arbitration agreements until Plaintiffs requested the agreements. (*Id.*).

In response, Vanity contends its actions were not inconsistent with arbitration given that Vanity has not attempted to litigate the case. (ECF No. 44 at 4). Vanity notes that no discovery has occurred as neither party has issued discovery. (*Id.* at 5). Vanity also contends that Plaintiffs caused delay in the case through requesting and obtaining three extensions to respond to Vanity's Motion to Stay Proceedings pending the Sixth Circuit's review (ECF Nos. 28, 30, and 32). (*Id.*). Vanity highlights that Plaintiffs also requested an extension to respond to briefing in the Sixth Circuit. (*Id.* at 5). In sum, it is Vanity's position that the Opt-In Plaintiffs' claims "rise and fall" with Hines's claims given that once opt-in plaintiffs join a FLSA action, their claims maintain the same status of the named plaintiffs, and accordingly, if Hines's claims are subject to arbitration, the Opt-Ins

12

claims are subject to arbitration too. (*Id.* at 5) (citing *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023)).

In *Johnson Associates Corp. v. HL Operating Corp.*, the Sixth Circuit found that the defendant acted inconsistently with arbitration where the defendant waited several months before moving to compel arbitration, asserted a counterclaim, participated in settlement discussions, participated in a case management conference, and engaged in discovery by requesting documents and serving interrogatories among other actions that furthered the litigation. 680 F.3d 713 (6th Cir. 2012). Similarly, in *Schwebke v. United Wholesale Mortg. LLC*, the Sixth Circuit found that the defendant acted inconsistently with arbitration where seven months elapsed before a motion to compel, and the defendant "participated in extensive discovery—producing tens of thousands of pages of documents, taking and defending depositions, and issuing third-party subpoenas— without ever mentioning arbitration." 96 F.4th at 977. As such the Sixth Circuit opined that the defendant had "nearly complet[ed]" discovery and thus acted inconsistently with arbitration. *Id.* at 975.

This case is distinguishable from *Johnson Associates* and *Schwebke*. Neither Vanity nor Plaintiffs have initiated any discovery, nor did the parties engage in mediation. In terms of the length of time that has passed, Vanity filed its initial Motion to Compel Arbitration for Hines in October 2023, months prior to the Opt-In Plaintiffs becoming parties to the case. (ECF No. 4). Just after this Court's August 7, 2024, Opinion & Order (ECF No. 23), Vanity then filed its Notice of Appeal to the Sixth Circuit and subsequently obtained a stay of the case pending the appeal. (ECF No. 35). Since then, the parties have not engaged in litigation of this case. Accordingly, this Court finds no evidence that Vanity has acted "completely inconsistent" with its right to arbitrate,

13

especially given Plaintiffs' reliance on *Clark v. A&L Homecare & Training Ctr.*, to establish that the Opt-In Plaintiffs now maintain the same status of the Hines. (ECF No. 43 at 2–3). Accordingly, this Court finds that where Hines is subject to arbitration, so are Watson and Sparks. *See Madhat v. Lipsey Commc'ns, LLC,* 2020 WL 5250453, at *8 (N.D. Ohio Sept. 3, 2020) (requiring all plaintiffs to arbitrate where all plaintiffs had signed identical arbitration agreements and the opt-ins had filed consent forms that placed them "on equal footing with [the named plaintiff] for purposes of arbitrability…"). Vanity did not waive its right to compel arbitration of the Opt-In Plaintiffs.

### 2. FLSA Mandatory Fee-Shifting Provision

Next, Plaintiffs assert that the "opt-ins' agreements are void and unenforceable because they require each party to bear its own attorney's fees and costs, directly conflicting with FLSA's mandatory fee-shifting for prevailing plaintiffs." (ECF No. 43 at 4). In Vanity's view, the attorney's fees provision can be severed from the arbitration agreement and does not render the entire agreement unenforceable. (ECF No. 44 at 7–9). Notably, Plaintiffs provide no case law supporting that an arbitration agreement that provides each party will bear its own fees is automatically invalid. (ECF No. 43 at 5). This Court instead reasons that given the provision makes no mention of FLSA, it does not prevent the enforceability of the mandatory FLSA fee-shifting provision, and the language referencing fee bearing can be severed. *Buckley v. Nat'l Football League*, 2018 WL 6198367, at *4 (S.D.N.Y. Nov. 16, 2018) ("Although the Arbitration Clause states that 'each party ... shall bear its own attorneys' fees,' it does not expressly prohibit the prevailing party from recovering attorneys' fees under the terms of FLSA and ADEA."); *see also Sanchez v. Nitro Lift Techs., L.L.C.*, 91 F. Supp. 3d 1218, 1224 (E.D. Okla. 2015) (finding fee

provision severable from the agreement to arbitrate where state law allows); *Gaither v. Wall & Assocs.*, 2017-Ohio-765, ¶ 54 (2d Dist.) ("Although W&A's contract lacks an express severance clause, the rest of the arbitration agreement does not depend on the 'loser pays' provision, and severance would have no effect on the remaining provisions. Furthermore, as was noted, Ohio does have a robust policy favoring arbitration."). Given that the fee bearing provision in the arbitration agreement makes no express mention of FLSA and that Ohio law allows for severability, this Court finds the arbitration agreement enforceable.

### 3. Stout Factors

Finally, this Court must assess the *Stout* factors with regard to the Opt-In Plaintiffs. As to the first *Stout* factor—whether the parties agreed to arbitrate—this Court relies on the Sixth Circuit's ruling that the arbitration agreements signed by Hines demonstrated an enforceable agreement to arbitrate, and accordingly the Opt-In Plaintiffs' nearly identical arbitration agreements also satisfy the first *Stout* factor. *See supra* Section I.B. Plaintiffs contend, however, that arbitration agreement's fee provision conflicts with FLSA and therefore does not satisfy the first factor. For the reasons stated above, such provision can be severed. *See supra* III.B.2. The first *Stout* factor with regard to the Opt-In Plaintiffs is satisfied.

The second *Stout* factor is also satisfied. The Opt-In Plaintiffs also agreed to arbitrate "[a]ny and all disputes or claims that arise out of this Agreement, a breach of this Agreement, or out of the relationship between me and [Vanity]." (ECF No. 40-1, Exhibit A). Given that the current claims arise out of the relationship between the parties, these claims fall directly within the scope and plain language of the arbitration agreement. *See supra* Section III.A.1 (citing *Seguin*, 2025 WL 2797277, at *5). Despite Plaintiffs' attempts to argue that their FLSA claims fall outside

15

the agreements' scope because "misclassification challenges the fundamental 'independent contractor' premise of the leases" rather than arises from them, such arguments do not overcome the plain language of the agreement. *See Klatte v. LaserShip, Inc.*, 2019 WL 4413043, at *3 (S.D. Ohio Sept. 16, 2019) (finding "[p]laintiff's FLSA and Ohio state law claims 'ar[o]se out of' the Agreement and [fell] within the Agreement's scope" where plaintiff alleged he was misclassified as an independent contractor).

As to the third *Stout* factor, congressional intent, Plaintiffs reiterate their mandatory fee-shifting arguments in asserting that under FLSA Congress intended for employees to pursue claims without financial barriers. As discussed thoroughly above, however, the provision of the arbitration agreement requiring each party to bear its own fees can be severed. *See supra* III.B.2. Given that the Sixth Circuit has held FLSA claims to be arbitrable under the FAA, the third *Stout* factor is satisfied. *See supra* Section III.A.2.

Finally, under the Fourth *Stout* factor this Court must evaluate whether to stay the proceedings pending arbitration. Plaintiffs contend the Court should sever the Class proceedings and allow Plaintiffs to move for conditional and class certification if it finds the claims here subject to arbitration. (ECF No. 43 at 6). Given this Court determined that Opt-Ins claims rise and fall with Hines's claims (*see supra* III.B.1), and that all claims asserted arise out of the relationship between Vanity and the Opt-In Plaintiffs, this Court finds it prudent to stay the entire case pending arbitration. *See supra* Section III.A.3; *Harb v. Mario Gibson LLC*, 2025 WL 1710231, at *5 (E. D. Mich. June 18, 2025) ("Under § 3, the Court is required to grant the stay so long as the issue is arbitrable, one of the parties applied for a stay, and 'the applicant for the stay is not in default in proceeding with such arbitration.'"). Accordingly, this Court will stay the case pending arbitration.

16

## IV. CONCLUSION

Therefore, for the reasons stated above, and for good cause shown, this Court **GRANTS** Vanity's Motion to Stay (ECF No. 40), and this case is **STAYED** pending arbitration for all Plaintiffs. The portions of the arbitration agreement referencing costs and fees are void and unenforceable and severed from the arbitration agreement. The remainder of the agreement stands. The parties are **ORDERED** to file a joint status report with the Court once arbitration for all Plaintiffs concludes.

    **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE: May 18, 2026**

17